# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          **Plaintiff,**

     **v.**                            **Case No. 05-CR-81**

WILLIE LEE JONES,

          **Defendant.**

## RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT ON THE DEFENDANT'S PRETRIAL MOTIONS

### INTRODUCTION

On March 15, 2005, the grand jury returned a single-count indictment charging Willie Lee Jones ("Jones") with possession of a firearm, after having been convicted of a crime punishable by imprisonment for a term exceeding one year. Jones has filed a plethora of pretrial motions that seek suppression of the firearm specified in the indictment, suppression of Jones' post-arrest statement, and dismissal of the indictment. This court has previously entered orders on all of the motions filed by Jones, which are now ready for final resolution. The date for a jury trial will be scheduled by Judge Clevert. A discussion of the procedural history of this case, necessary to an understanding of the issues set forth in Jones' many pending motions, follows.

### I. Motions to Suppress

Jones, by his counsel, filed a motion to suppress the statements he made to law enforcement officials on January 5, 2005, following his arrest. As grounds for his motion to suppress, Jones argued

(1) that he was not properly advised of his <u>Miranda</u> rights; (2) that he did not knowingly and intelligently waive his rights; and (3) that his statement was involuntary. In support of the latter two claims, Jones claimed that he consumed drugs prior to the statement and was promised release in exchange for his statement.

On October 5, 2005, this court conducted an evidentiary hearing to address the issues raised in the motion to suppress, as well as a motion to remove counsel and a <u>pro se</u> motion to suppress that Jones filed prior to the evidentiary hearing. For the reasons discussed in detail on the record, Jones' motion to remove counsel was granted, Jones' <u>pro se</u> motion to suppress was substituted for the motion filed by his counsel, and Jones proceeded at the evidentiary hearing on a <u>pro se</u> basis. (Tr. 15.). His court-appointed counsel was appointed to serve in the capacity as standby counsel to procedurally assist the defendant at the hearing and to assure the efficacy of the proceedings. (Tr. 15-16).

## II. Untimely Amended Motion to Suppress

At the close of testimony at the evidentiary hearing, the court ordered that Jones file a post-hearing brief in support of his motion no later than October 21, 2005. After the deadline for Jones to file his brief had expired, Jones filed a number of post-hearing submissions, including an amended motion to suppress which alleges that law enforcement officers stopped Jones without probable cause or reasonable suspicion. Even though the amended motion was untimely, and Jones gave no cause for his delay, this court permitted Jones to assert the additional argument set forth in his amended motion. (Order, Oct. 28, 2005 at 3.).

## III. Second Group of Untimely Post-hearing Submissions

Then, on November 2, 2005, Jones filed a second round of untimely post-hearing submissions

2

without demonstrating good cause for his delay. Jones' motions were entitled: (1) a "motion to suppress evidence due to illgal stop;" (2) a "motion to suppress fruits of search and seizure of person and property in violation of U.S. Constitution;" and (3) a "motion to extend time to suppress fruits of search and seizure of persona nd propery in violation of U.S. Constitution Amend. IV."

These motions are dated prior to the court's October 28, 2005 order which permitted Jones to amend his motion to suppress and ordered the government to respond to the additional argument that police stopped Jones without probable cause or reasonable suspicion. Jones simply set the argument forth in a motion and was not required to do so. Accordingly, as indicated in its order dated November 4, 2005, these three motions are moot, and the court will recommend that they be denied without further discussion.

### IV. Third Group of Untimely Post-hearing Submissions

On November 16, 2005, Jones filed additional untimely pretrial motions: (1) a motion to suppress evidence due to violations of the Speedy Trial Act; (2) a motion to suppress fruits of search and seizure without probable cause; (3) a motion to extend time to suppress evidence due to violations of the Speedy Trial Act; (4) a motion to dismiss the indictment under the Speedy Trial Act; (5) a motion "to order constitutional claims on their own merits," the caption of which cites the Fourth, Fifth, Sixth, and Fourteenth Amendments, as well as the Speedy Trial Act and the Bail Reform Act; and (6) a motion to exclude any and all amended motions to include probable cause and amended pleadings. As stated in its November 18, 2005 order, many of these motions discuss issues argued by Jones in his previous submissions.

Some of these motions ask that the Fourth Amendment claims asserted in Jones' amended motion to suppress be treated as an independent claim for suppression, rather than as an argument

3

related to Jones' Fifth Amendment claim. Yet, at other times, the motions continue to relate Fourth Amendment and Fifth Amendment rights. For example, in one of the motions, Jones states that he:

> was not making a Fourth Amendment claim or a combination of claims. In actuality, Defendant's intentions was only to show a 'pattern or practice' of conduct by law enforcement officers that deprived the defendant of his Fifth Amendment <u>Miranda</u> rights and privileges.

(Jones Mot. to Exclude Amded Mots., Docket 57 at 2.).

In response to the amended motion to suppress, the government argued that suppression is not appropriate based on the Fourth Amendment because law enforcement officers had reasonable suspicion to confront Jones and later had probable cause to arrest Jones. In support of this position, the government submitted the affidavits of several police officers that were involved in Jones' arrest. Accordingly, as explained in this court's November 18, 2005 order, Jones and the government have both had adequate opportunity to address all grounds for suppression that Jones has raised—either in conjunction with his original motion to suppress or expressed in additional submissions as independent grounds for relief. The issue of suppression is now ready for resolution.

In addition, the government has now responded to new issues related to the Speedy Trial Act that Jones raised for the first time in the November 16, 2005 submissions. Accordingly, despite that the issue was not timely raised, it is also now ready for resolution and will be addressed herein.

### V. Fourth Untimely Post-hearing Submission

On January 13, 2006, Jones filed another untimely motion. This motion seeks dismissal of the indictment based on Jones' detention. In the opinion of this court, this motion reasserts arguments that Jones has already presented. Therefore, even though the government did not file a response to this motion, the issues asserted by Jones have been adequately addressed and are also ready for resolution.

4

# ANALYSIS

## I.  MOTIONS TO SUPPRESS

At the October 5, 2005 evidentiary hearing, Jones initially appeared by counsel.  However, after his motion to remove counsel was granted, Jones appeared and testified on his own behalf, with Attorney Mark S. Rosen acting as standby counsel and assisting in the defendant's direct examination. The government appeared by Assistant United States Attorney James L. Santelle and presented testimony by Milwaukee Police Detective Matthew Quist ("Detective Quist"), who interviewed Jones following his arrest.  In addition, the government made an offer of proof as to the testimony of Milwaukee Police Officer Brian C. Burch ("Officer Burch"), who arrested Jones and seized the firearm set forth in the indictment.  At the evidentiary hearing, Officer Burch did not testify because Jones' motion to suppress was limited to the circumstances surrounding Jones' statement and not the events of his arrest.  However, Jones now argues that Officer Burch and his partner, Milwaukee Police Officer Jeffrey Novack ("Officer Novack"), violated his rights under the Fourth Amendment. Accordingly, the government has filed several affidavits in response to new Fourth Amendment issues raised in Jones' post-hearing submissions.      A summary of the relevant events from Jones' perspective will be discussed first.

### Jones' Testimony

According to Jones, he first encountered Officers Burch and Novack shortly after he smoked marijuana and took two ecstasy pills.  These drugs made him feel high, strong, "not in a normal state of mind," and "like a street talker," "a slick talker," "a fast talker,"or "a smooth talker." (Tr. 66-68.). Officers Burch and Novack saw Jones standing outside a grocery store from their car and asked him

5

to come speak with them. (Tr. 68, 69.). Jones declined and started to walk home, which was located nearby. (Tr. 69.). At that point, Officer Burch jumped out of the car and Officer Novack spun the car around. (Tr. 69-70.). Jones began to run. (Tr. 70.).

Although the officers chased Jones, the officers never yelled for Jones to stop running (Tr. 70-71.), never caught Jones (Tr. 73.), and never wrestled with Jones (Tr. 73.). Instead, the officers chased Jones and, at one point, Officer Novack tried to "clothesline" Jones, but missed. This allowed Jones to slide out of his jacket, which had been stuck to a fence. (Tr. 60.). Jones then had the opportunity to escape the officers, but could not continue running because he was out of breath. (Tr. 61.). Accordingly, Jones voluntarily stopped, put his hands up, got down on the ground, and put his hands behind his back. At that point, Officers Burch and Novack jumped on Jones, handcuffed him, and began punching him in the face. (Tr. 61.). Then, the officers put Jones in their squad car. (Tr. 61.). From inside the squad, Jones saw Officer Burch get his jacket, which was still affixed to the fence, and plant a gun in it. (Tr. 63, 84-85.). Then, despite Jones' request to be taken to a doctor, Officers Burch and Novack took Jones to the police station. (Tr. 61.).

Upon arrival at the police station, in a garage, Officers Burch and Novack took photographs of Jones' face. Sergeant Joseph M. Seitz ("Sergeant Seitz") was present at this time and told the officers that Jones should be charged with excessive force to a police officer. (Tr. 57.). In Jones' opinion, Sergeant Seitz made that statement to induce him to decline medical attention—in other words, if Jones sought medical attention for his injuries, Sergeant Seitz would charged him with excessive force. (Tr. 57.).

Then, Sergeant Seitz asked Jones whether he knew about drug trafficking in his neighborhood, and Jones interpreted Sergeant Seitz's question as a request for him to act as an informant in exchange

6

for his prompt release. Jones quickly agreed to give information about drug trafficking in his neighborhood, went into the police station with Officers Burch and Novack for that purpose, and did not believe he was under arrest. (Tr. 57-58, 76.). Inside the police station, Jones was placed in a room but was not booked. In Jones' opinion, this confirmed that he was not under arrest because—when arrested or apprehended in the past—Jones was promptly fingerprinted and booked. (Tr. 58.). Thus, in Jones' opinion, an arrest does not occur until a suspect is fingerprinted and booked, and he was never under arrest. (Tr. 75.).

After some time had passed, Detective Quist took Jones to another room and asked Jones what happened to his face. (Tr. 59.). Jones responded that Officers Burch and Novack had beaten him up, but did not request medical attention for his injuries. (Tr. 59, 81.). In addition, Jones said that Sergeant Seitz promised that he would soon be released to act as an informant. (Tr. 59.). Jones testified that he had no difficulty understanding the agreement he made with Sergeant Seitz or communicating that agreement to Detective Quist. (Tr. 78-79.). Detective Quist neither confirmed nor denied this promise and proceeded with the interview. In doing so, Detective Quist allegedly never asked whether Jones had taken drugs and never read Jones his Miranda warnings. (Tr. 62, 77.).

Jones says that he took part in the interview only because he had taken ecstasy, smoked marijuana, was beaten up, and wanted to be released. (Tr. 59-60.). However, instead of answering Detective Quist's questions truthfully, Jones lied. (Tr. 62.). He falsely told Detective Quist that he had lived in Tennessee, that he was born in Memphis, that his family members were born in Memphis, that his daughter lives in Georgia, and that he had borrowed the gun found in his jacket from a friend. (Tr. 62, 63, 85-86.). In addition, Jones said that he implicated a person named Maurice but gave Detective Quist a false last name for that person. (Tr. 64.). Thus, when Detective Quist searched his

7

computer for the person Jones described, no match was found. (Tr. 64.).

After the interview, Jones says that he refused to sign the report that Detective Quist prepared. (Tr. 64.). However, when Detective Quist warned Jones that he would be held until he signed the report, Jones complied. (Tr. 64, 77-78.). Once he signed the report, even though he gave false information, Jones felt that he was entitled to be released and that the police did not hold up their end of the agreement. (Tr. 83.).

### Law Enforcement Officers' Testimony

Law enforcement officials testifying on behalf of the government presented a dramatically different description of Jones' arrest and post-arrest statement. According to Officer Burch, residents in the neighborhood near the store where Jones was seen, which is a relatively high-crime area, had complained of loitering, drug dealing, and other disturbances. While on patrol in that area, Officers Burch and Novack noticed Jones and a group of other people standing in front of a grocery store, near a "no loitering" sign. Officer Burch exited the squad and approached the group. Upon doing so, Jones quickly walked away and repeatedly looked back at Officer Burch. Shortly thereafter, Jones began to run from Officer Burch which cause Officer Burch to pursue him and yell "Stop! Police!" (Officer Burch Aff. ¶¶ 3-7.).

Jones continued to flee and, when he attempted to jump over a fence, Officer Burch was able to temporarily grab Jones by the jacket. Jones, however, slipped off his jacket, proceeded over the fence, and continued to run from Officer Burch. Eventually, Officer Burch caught up to Jones, attempted to wrestle him to the ground, and, in effort to subdue Jones, struck him in the chin. By that time, Officer Novack arrived and assisted Officer Burch in controlling Jones. This required Officer Novack to also strike Jones in the chin. (Officer Burch Aff. ¶¶ 8-12.).

Thereafter, Jones stopped resisting the officers, was handcuffed, and was placed in the officers' squad car. During the course of his apprehension, Officer Burch found a bag of marijuana in Jones' front pants pocket. In addition, once Jones was contained, Officer Burch retrieved Jones' jacket and found the firearm specified in the indictment in one of the pockets. Upon observing Officer Burch's discovery, Jones stated "[t]hat's why I ran." (Officer Burch Aff. ¶¶ 13-15.).

Sergeant Seitz, who routinely investigates arrests that involve physical force, was summoned to scene by Officers Burch and Novack. (Officer Burch Aff. ¶ 16; Sergeant Seitz Aff. ¶ 6, 9.). Upon his arrival, the officers described Jones' attempt to flee and the force used to apprehend Jones. Sergeant Seitz took pictures of Jones and ultimately concluded that the level of force used by the officers was necessary and not excessive. (Sergeant Seitz Aff. ¶ 9.). In addition, Officer Burch and Sergeant Seitz both testify that Jones (1) never asked for medical attention or appeared to need medical attention; (2) did not appear to be under the influence of illegal drugs or alcohol; and (3) was alert, attentive, responsive, and fully aware of circumstances and events that occurred. Moreover, Officer Burch and Sergeant Seitz both claim that they never promised Jones that he would be released to work undercover after giving a statement at the police station. (Officer Burch Aff. ¶ 17-19; Officer Seitz Aff. ¶ 10-12.).

Once Sergeant Seitz completed his investigation at the scene, Jones was transported to the police station for further questioning by Detective Quist. Detective Quist testified that he commenced the interview by explaining that he intended to interview Jones regarding his arrest for possession of a firearm and marijuana. Immediately thereafter, Detective Quiest read Jones his Miranda warnings from an advice of rights card issued by the state of Wisconsin; asked Jones whether he understood each of his rights; and asked Jones whether he was willing to waive his rights and make a statement.

(Tr. 27-28.). Jones indicated that he was willing to do so. (Tr. 29.).

In describing Jones' demeanor at the time of the interview, Detective Quist testified that Jones (1) appeared to understand his Miranda rights and waiver, (2) did not appear to be under the influence of alcohol or drugs, (3) did not appear to be in physical pain, and (4) did not appear to be mentally or intellectually unable to understand the discussion. (Tr. 29-31.). In addition, during the preliminary portion of the interview, when Detective Quist asked Jones questions about his background and history, Detective Quist also asked Jones whether he was under the influence of drugs or alcohol or was suffering from a medical or mental problem. Jones indicated that he was not, and Detective believed that Jones' response to these questions to be truthful. (Tr. 36.).

The interview proceeded without incident as Detective Quist and Jones discussed the evidence recovered by Officers Burch and Novack. Jones stated that he had been arrested a few weeks ago by Officers Burch and Novack and was quickly released. As a result of his release, neighbors accused Jones of cooperating with the police and threatened him. This compelled Jones to borrow the firearm seized by Officer Burch from a friend. (Tr. 37.). In addition, Jones stated that the firearm had been in his jacket pocket, which came off during his attempt to flee from Officers Burch and Novack. (Tr. 38.).

After his dicussion with Jones ended, Detective Quist summarized Jones' statement in a report. Jones then reviewed the report with Detective Quist, indicated that the report accurately reflected his statement, initialed changes that Detective Quist had made in drafting the report, and signed the report. (Tr. 38-40; Hrg. Ex. 1.).

### Credibility Determination

For several reasons, the court does not find Jones to be a credible witness. According to Jones,

Case 2:05-cr-00081-PP   Filed 02/09/06   Page 10 of 15   Document 72

he took multiple illegal drugs just prior to his arrest, was in need of medical attention, and, consequently, was unable to give knowing and voluntary statement to Detective Quist. If that were the case, it is likely that Jones' condition would have also prevented him from having the capacity to reliably describe many of the events that he testified about in specific detail. For example, Jones claims that he was cognizant enough to (1) remember the specific details of his arrest, (2) recall the agreement that he allegedly made with Sergeant Seitz, (3) remember the precise words used by Detective Quist during his interview, (4) craft a statement that was chalked with lies in a calculated effort to expedite his release, and (5) persuasively communicate his false statement to Detective Quist.

In addition, if Jones' primary objective was to be released from custody, and Jones thought that his release depended on assisting the police with their drug trafficking investigation, it does not follow that Jones would lie to Detective Quist. Under that scenario, Jones did not fulfill the only obligation that he believed would lead to the result he wanted.

Moreover, while Jones claims that Officer Burch planted the gun in his jacket, Jones supplied no explanation as to where Officer Burch obtained the gun from or what motive Officer Burch would have for planting evidence on him. Jones' testimony also conflicts with the only documentation about his arrest, which was Sergeant Seitz's use of force report and Officer Novack and Burch's incident report, both of which are consistent. (Hrg. Ex. 5, 6.). Jones' testimony also conflicts with the statement report that Detective Quist composed and that Jones reviewed and signed. Furthermore, while Jones claims that he believed he was not under arrest and was not being interrogated, that position is belied by the fact that the officers apprehended Jones by use of force, handcuffed Jones, searched Jones, secured him to their squad car, immediately transported Jones to the police station, and drafted a formal report of his statement that they required Jones to review and sign.

11

Jones readily admitted that he lied to Detective Quist when he believed it was in his best interest to do so. At the evidentiary hearing, it was also in his best interests to deny that he had been read his Miranda warnings, to claim that the police planted the gun on him, and to contend that certain promises had been made. For all of the foregoing reasons, it is the opinion of this court that Jones' testimony reflects his desire to avoid criminal liability and as such, he failed to testify accurately regarding the events of his arrest and post-arrest statement. In contrast, the testimony of Officer Burch, Detective Quist, and Sergeant Seitz was consistent and detailed and, therefore, the more credible account of what happened.

This credibility determination is critical to the resolution of Jones' motion to suppress. Because this court credits testimony that Jones was properly advised of his Miranda rights, knowingly and voluntarily waived those rights, was not promised that he would be released, and was competent to speak with Detective Quist, there is no basis for suppression under the Fifth Amendment. Relevant to Jones' Fourth Amendment claim, this court credits Officer Burch's testimony that he approached Jones for loitering in a high-crime area; under a "no-loitering" sign; where neighbors complained of loitering, drug trafficking, and other disturbances. Almost immediately thereafter, Jones ran from Officer Burch and refused his requests to halt. Under similar circumstances, the United States Supreme Court and the Seventh Circuit Court of Appeals have held that police have reasonable suspicion to pursue a suspect and to conduct an investigatory stop. Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000)(presence in an area of heavy narcotics trafficking and unproved flight constitute reasonable suspicion); United States v. Breland, 356 F.3d 787, 791 (7th Cir. 2004)("once Breland fled from police, the officers undoubtedly had reasonable suspicion to pursue Breland in order to conduct a Terry stop"); United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003)(stating that "a person's flight

12

upon seeing the police approach in a high crime area establishes reasonable suspicion to justify a Terry stop" and that "[a] suspect's failure to halt upon police command to do so . . . further supports a finding of reasonable suspicion."). Moreover, because this court credits the officers' testimony that the force used to subdue Jones was triggered by, and in proportion to Jones' resistance, there is no basis to conclude that the officers' seizure was unreasonable or beyond the scope of what the Fourth Amendment permits. When the officers eventually gained control of Jones, they quickly discovered the firearm specified in the indictment and marijuana. These discoveries, in addition to the fact of Jones' resistance, constitute probable cause to arrest Jones. Accordingly, the court will recommend that the Jones' motions to suppress be denied.

## II. MOTION TO DISMISS AND MOTION TO SUPPRESS FOR VIOLATIONS OF THE SPEEDY TRIAL ACT

In these motions, Jones objects to the duration of his pretrial detention and claims that his right to a speedy trial pursuant to the Sixth Amendment, the Fourthteenth Amendment, and the Speedy Trial Act has been violated. This court disagrees.

The grand jury returned the indictment in this case on March 15, 2005. Prior to that time, Jones was detained pursuant to state charges filed against him in State of Wisconsin v. Jones, Milwaukee County Case Number 2005-CF-66, available at http://wcca.wicourts.gov. On April 22, 2005, Jones appeared before this court for an arraignment and plea hearing. At that time, the court established a pretrial motion schedule and advised Jones that a jury trial in this case was scheduled to commence before the Honorable Charles N. Clevert on July 7, 2005.

On June 24, 2005, prior to the expiration of any deadline under the Speedy Trial Act, Jones' counsel filed a motion to withdraw, stating that Jones was displeased with his representation, that

Jones wanted a different attorney, and that Jones agreed to waive any speedy trial demand so that new counsel can be appointed. (Plantinga Aff. ¶¶ 3-5.). The court granted the motion to withdraw and adjourned the upcoming trial date accordingly. New counsel was appointed and, on September 8, 2005, defense counsel indicated a desire to file a pretrial motion to suppress beyond the motion deadline, which had expired almost four months prior. In the interests of justice, the trial court granted Jones additional time to file a motion to suppress and tolled the deadlines of the Speedy Trial Act so that Jones' new motion could be addressed. (J. Clevert Order, Sept. 8, 2005.).

Then, after being repeatedly advised that adherence to the court's motion deadlines and scheduling orders is required (see e.g., Tr. at 102-03; Order, Nov. 18, 2005 at 2-3.), Jones filed a series of untimely, post-hearing motions and submissions without demonstrating cause for his delay. Many of these motions raised new claims or expanded the scope of arguments previously presented, thereby requiring extensions of the briefing schedule. As the history of this case indicates, the many delays that have been incurred were at Jones' request. In addition, the Speedy Trial Act was tolled to accommodate Jones' change of counsel and motion to suppress and will remain tolled until the pending motions are resolved. Under these circumstances, Jones right to a speedy trial—be it under the Speedy Trial Act or the Sixth and Fourteenth Amendments—has not been violated. Accordingly, the court will recommend that all motions based on Jones' right to a speedy trial be denied.

For all the reasons discussed herein, the court now enters the following recommendations on Jones' pretrial motions:

**IT IS THEREFORE RECOMMENDED** that Jones' motions to suppress be **denied.**

**IT IS FURTHER RECOMMENDED** that Jones' motions to suppress evidence and to dismiss the indictment based on the right to a speedy trial be **denied.**

14

The foregoing recommendation encompasses all of Jones' pending pretrial motions, which are set forth at Docket numbers: 26, 33, 40, 42, 46, 47, 48, 57, 58, 59, 60, 61, 62, 67, and 71.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin, this <u>9th</u> day of February, 2006.

<u>s/AARON E. GOODSTEIN</u>
United States Magistrate Judge

15